

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 28, 1948

Hon. Bascom Giles          Opinion No. V-486
Commissioner
General Land Office        Re:  Whether the primary
Austin, Texas                   term of Mineral Lease
                                No. 22624 is suspended
                                by operation of Art.
                                5341c, V.C.S.

Dear Mr. Giles:

By letter dated November 3, 1947, supplemented by letter dated January 10, 1948, you requested the opinion of this office whether the primary term of Mineral Lease No. 22624 expired on September 20, 1947, or whether the same has been, or should be, extended by reason of the provisions of Article 5341c, Vernon's Civil Statutes. The facts are as follows:

On September 20, 1937, the Commissioner of the General Land Office issued to the Superior Oil Company Mineral Lease No. 22624 covering Tract No. 45, containing 320 acres, more or less, out of Laguna Madre, Nueces and Kleberg Counties, Texas. This lease was for a primary term of five years.

Approximately six months prior to the expiration of the primary term, on March 24, 1942, Superior, by letter to the Commissioner, pointed out that the War Department had by letter dated March 21, 1942, refused to grant a drilling permit on this lease and requested that the Commissioner recognize the primary term of such lease as extended under the provisions of Article 5366a, Vernon's Civil Statutes, reading as follows:

"Section 1. In each case in which an oil and gas mineral lease has heretofore been granted or may hereafter be granted by the State of Texas on an area covered by the coastal waters of the State or within the Gulf of Mexico and in which the War Department of the United States refuses to grant a permit to the lessee or owner of

such lease to drill a well thereon for oil,
gas or other minerals (the area included in
such lease being within the navigable wa-
ters of the United States) and in the event
the primary term of such lease should expire
during the period of time in which the War
Department of the United States may con-
tinue to refuse to issue such permit, then
and in such event the primary term of such
lease is hereby extended for successive pe-
riods of one (1) year from and after the
end of the original primary term of such
lease while and so long as the War Depart-
ment may continue such refusal to issue to
the lessee or to the owner of such lease a
permit to drill for oil, gas or other min-
erals, on the area covered thereby; provid-
ed, that in order to make such extensions
effectual the lessee or the owner of such
lease shall, during each of the annual pe-
riods during which the primary term of the
lease is so extended, apply to and seek to
obtain from the War Department a permit to
drill a well for oil, gas or other miner-
als on the area covered by such lease and
be unsuccessful in its attempts to obtain
a permit, or, if successful in obtaining a
permit, commence operations for drilling a
well upon the lease premises within sixty
(60) days after obtaining such permit; and
provided further that the lessee or the own-
er of such lease continues to pay the annual
renewal rentals at the rate provided for in
such lease for the period of time involved
in such extensions. Should such lease be so
extended and should the War Department at
any time while such lease is still in force
and effect issue a permit to the lessee or
to the owner of such lease to drill a well
thereon for oil, gas or other minerals, such
lease shall continue in force and effect if
the lessee commences drilling operations up-
on the leased premises within sixty (60)
days after obtaining such permit, and so
long as the lessee or the owner of such lease
shall continue to conduct drilling or mining
operations thereon, or if oil, gas or other
mineral be discovered thereon by the lessee
or the owner of such lease, so long as oil,

gas or other mineral is produced from such
leased premises. Should the production of
oil, gas or other mineral on said leased
premises after once secured, cease from any
cause, such lease shall not terminate if
the lessee or owner of such lease commences
additional drilling, reworking or mining
operations within thirty (30) days there-
after or if it be within the original pri-
mary term of such lease, commences or re-
sumes the payment or tender of rental on
or before the rental paying date, if any,
next ensuing; but if there be no rental pay-
ing date next ensuing, the lease shall in
no event terminate prior to the expiration
of the primary term.

"Sec. 2. The Commissioner of the Gen-
eral Land Office is hereby authorized to is-
sue to the lessee or owner of said lease
such instrument in writing in the nature of
an extension of said lease as may be neces-
sary or proper to carry into effect the
foregoing provisions of this Act."

Thereafter, pursuant to the provisions of
said Article 5366a, the Commissioner on March 27, 1942,
executed an instrument extending the primary term of
said Lease No. 22624 in the language of the statute,
as follows:

". . . do hereby grant to the Superior
Oil Company the present owner of such lease
as shown by the records of the General Land
Office, an extension thereof in accordance
with the provisions of Chapter 287 of the
Acts of the Forty-seventh Legislature and
do hereby extend said lease for successive
periods of one year from and after the end
of the original primary term of such lease
while, and so long as, the War Department
may continue such refusal to issue to the
lessee or to the owner of said lease a per-
mit to drill for oil, gas or other miner-
als, on the area covered thereby; provided,
that in order to make such extensions ef-
fectual the lessee or the owner of such
lease shall, during each of the annual pe-
riods during which the primary term of the

lease is so extended, apply to and seek to
obtain from the War Department a permit to
drill a well for oil, gas or other minerals
on the area covered by such lease and be
unsuccessful in its attempts to obtain a
permit, or, if successful in obtaining a
permit, commence operations for drilling
a well upon the leased premises within six-
ty (60) days after obtaining such permit;
and provided further that the lessee or the
owner of such lease continues to pay the
annual renewal rentals at the rate provided
for in such lease for the period of time
involved in such extensions."

As stated in your letter of November 3, 1947,
Superior repeated its request to the War Department in
compliance with the statute and the extension instru-
ment dated March 27, 1942, each year during the years
1943, 1944, 1945, and 1946. Each of these yearly re-
quests was refused by the War Department. During this
period Superior paid its annual rental as required.

No request was made by Superior to the War
Department for permission to drill Lease No. 22624 dur-
ing the year 1947, and the primary term of said lease
as extended under the provisions of Article 5366a and
the extension instrument dated March 27, 1942, came to
an end, without drilling operations thereon, on Septem-
ber 20, 1947, unless said primary term has been <u>sus-
pended</u> as contended by Superior under the provisions
of Article 5341c, Vernon's Civil Statutes, reading as
follows:

"Section 1. If the owner of any valid
oil and gas lease granted by the State is
denied access to or is denied a permit to
drill upon or produce from the leased prem-
ises by any duly constituted authority of
the United States of America, after a bona
fide attempt has been made by such owner to
obtain access or permit to drill upon or
produce from the leased premises, such owner
may file with the School Land Board an ap-
plication describing and giving the date of
the action which deprives him of the right
of access or the right to drill upon or pro-
duce from the premises, and if said Board is
satisfied that the facts set forth in the

application are true, the Board may enter an order upon its minutes suspending the running of both the primary and the principal term of such lease, or suspending any condition, obligation or duty thereunder as of the date of the origin of the cause of suspension and during the existence of the cause of suspension, so long as the lessee continues to make on each anniversary date of such lease the annual rental payments stipulated in the lease during the period of suspension. Such oil and gas lease shall remain in status quo, and all obligations and conditions existing under such lease or such of them as may be suspended by said Board, shall be inoperative and of no force and effect, except the obligation to pay delay rentals as provided for herein, until ninety (90) days after the School Land Board shall enter an order upon its minutes reciting that the cause for suspension has ceased to exist, at which time such oil and gas lease shall, provided the rental payments have been made during the period of suspension, again become operative and all of the suspended obligations and conditions, including the payment of rentals under same, shall again attach and be in force, and in the case of the suspension of the primary and/or principal terms of the lease, the lease shall thereafter continue in force for a period equivalent to the unexpired term of the lease on the date of origin of the cause for suspension. The Commissioner of the General Land Office shall give notice immediately to the lessee of the entry of the order that the cause for suspension has ceased to exist; provided, however, that the annual rental payments have been met.

"Sec. 2. Nothing contained herein shall be construed as abridging any rights or privileges conveyed by Chapter 287, Acts of the Forty-seventh Legislature, Regular Session."

It will be noted that while Article 5366a provides for the extension of the primary term of a lease when the War Department refuses to grant a permit to a State lessee to drill a well thereon, Article 5341c,

enacted two years later by the 48th Legislature, provides that the School Land Board <u>may suspend</u> the running of both the primary and principal terms of such lease or "any condition, duty or obligation thereunder" as of the date of the origin of the cause of suspension.

Article 5366a is self-operative as to <u>exten-</u><u>sions,</u> the statute providing that when the War Department refuses to permit drilling, and in the event the primary term should expire while the War Department continues to refuse, "the primary term of the lease <u>is</u> <u>hereby</u> extended," for successive periods of one year. It is provided, however, that such lessees must continue to make request of the War Department from year to year and must continue to be refused permission in order for the automatic extensions under the statute to be operative.

Article 5341c is quite different. In order to be entitled to the benefits of Article 5341c, it is required:

1)    That the lessee have a valid lease;

2)    That the lessee be denied access to, or denied permit to drill upon or produce from the leased premises by a duly constituted authority of the United States of America <u>after a bona fide attempt is made to</u> <u>obtain access or permit to drill;</u>

3)    That an application be filed with the School Land Board reciting such facts;

4)    That the School Land Board satisfy itself that the facts set forth in the application are true;

5)    That the School Land Board enter an order on its minutes suspending the running of the primary or principal term of the lease or a condition, obligation, or duty thereunder.

It is to be observed that the School Land Board is vested with discretion in the matter. The statute requires that the Board be satisfied that the matters recited in the application are true. It then provides that the Board <u>may</u>, not shall, enter an order suspending the running of the primary term or principal term or other condition, obligation, or duty under

the lease.  It is only after such an order has been
entered that the lease and all obligations thereunder
remain in status quo (except the payment of rentals).
This status quo, the status created by the entry of
such an order, remains until 90 days after the School
Land Board shall enter a further order upon its min-
utes reciting that the cause for suspension has ceased
to exist.  Thereupon the lease continues in effect for
a period equivalent to the unexpired term of the lease
as of the date of the origin of the cause for suspen-
sion.

It is clear that Superior has not brought it-
self within the terms of Article 5341c.  On August 15,
1947, a month and five days prior to the expiration of
the primary term, as extended by the provisions of Ar-
ticle 5366a, Superior requested a further "extension"
of said lease beyond September 20, 1947, "until the
United States of America, by Congress, passes a proper
Act, signed by the President of the United States dis-
claiming unto the respective states all submerged area
under inland waters and seas, or in the absence of ex-
isting legislation, this applicant asserts its equi-
table right that the term of said lease shall extend
beyond September 20, 1947, and for a reasonable peri-
od, and thereafter until the cloud on title is removed,
to be recognized either in Court of Equity or by leg-
islative act of the State of Texas affirming and con-
firming existing leases in such cases, and thereafter
during a reasonable time within which the Lessee may
begin its operations."  It was not claimed by this let-
ter that Superior was entitled to rights under Article
5341c, nor was the letter an application within the
terms of that article.  Indeed, in this letter Superi-
or stated, "we are unable to refer you to any specific
statutory provision under which further extensions are
permitted under said lease."

We have also examined copies of subsequent
letters of Superior to your office dated August 19th,
August 21st, and August 27th.  By none of these let-
ters did Superior make application to the School Land
Board for the entry of an order on its minutes sus-
pending the running of the primary term of Lease No.
22624.  On the contrary, by each of these letters Su-
perior requested to be informed of the date the School
Land Board had entered an order on its minutes reciting
that the cause for suspension of the lease had ceased
to exist.  In its letter of August 27th Superior ten-
dered its Check in the amount of $80.00 "as rental to

August 19, 1948, when the equivalent of the suspended period of the primary term of said lease will expire after said ninety days from entry of order in the minutes of the School Land Board that the source of the cause of suspension ceased to exist."

Apparently, the contention asserted by Superior is that Article 5341c is self-operative and inures to the benefit of a lessee whose primary term has been extended pursuant to the provisions of Article 5366a even though no application for suspension of the primary term of the lease has been filed with the School Land Board under the provisions of said Article 5341c, and even though the School Land Board has not entered an order, pursuant to proper application, suspending such primary term.

We cannot subscribe to this view. Superior applied for and obtained an extension of the primary term of Lease No. 22624 under Article 5366a. As long as Superior kept within its terms this statute provided for automatic yearly extensions of the primary term of the lease, conditioned that Superior apply yearly to the War Department for permit to drill the lease, and make yearly payment of the rentals. Superior chose not to come within the terms of this statute during the year 1947. Superior did not apply during that year to the War Department for permission to drill the lease. Superior's rights under Article 5366a and the extension instrument dated March 27, 1942, therefore terminated and expired on September 20, 1947.

Superior is entitled to none of the benefits of Article 5341c for the plain reason that it has made no application under that Article to the School Land Board resulting in the entry of an order by the Board suspending the primary term of its lease.

It is conceivable that Superior may now contend, although their plain import does not so reflect, that its letters to the Commissioner dated August 19th, August 21st, and August 27th should be construed and considered as an application to the School Land Board for the entry of an order suspending the primary term of Lease No. 22624. In this event we hold that Articles 5366a and 5341c should be construed together, and that in order for a lessee whose lease has been extended under the provisions of Article 5366a to be entitled to an order of suspension from the School Land Board

based upon refusal of the War Department to permit drilling, the lessee must have <u>currently</u> made a <u>bona fide</u> attempt to secure a permit to drill from the War Department, and have been refused.  Article 5341c clearly requires that the lessee make such a <u>bona fide attempt</u>.  We are not prepared to say that a request last made of the War Department in 1946 is such a "bona fide attempt" within the meaning of Article 5341c as to entitle an applicant in August 1947 to secure an order from the School Land Board suspending the primary term of its lease.

Moreover, we have been informally advised by you that the War Department lifted all drilling restrictions on the area in question on or about March 10, 1947.  We have also ascertained from the records of the Railroad Commission that the lessee in question has not filed its Notice of Intention to Drill with that Commission as required by its rules and regulations, and that no drilling activites have in fact been commenced on the leased premises.

Under the circumstances we are of the opinion that Lease No. 22624 has terminated under the provisions of paragraph 1 thereof as of September 20, 1947.

## SUMMARY

(1)  A State lessee not having applied for and obtained suspension of the primary term of its lease under Art. 5341c, V.C.S., is not entitled to the benefits of such statute, the statute requiring an application for, and order of, suspension by the School Land Board.

(2)  A State lessee whose lease has been extended from year to year until September 20, 1947, by compliance with Art. 5366a, V.C.S., is not entitled to the benefits of Art. 5341c, V.C.S., without showing a current bona fide attempt to secure

a drilling permit from the War Department.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *James D. Smullen*

James D. Smullen
Assistant

JDS:jt

APPROVED:

*Price Daniel*

ATTORNEY GENERAL